# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **EVANSTON INSURANCE COMPANY,** *Plaintiff* | * * * | **CIVIL ACTION NO. 2:17-CV-01031** |
| **VERSUS** | * * | **JUDGE ROBERT R. SUMMERHAYS** |
| **RICELAND PETROLEUM COMPANY,** *Defendant* | * * * | **MAGISTRATE JUDGE KATHLEEN KAY** |

**************************************************************************

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT ON BEHALF OF
## EVANSTON INSURANCE COMPANY

Respectfully submitted,

**DEGAN, BLANCHARD & NASH**

 */s/ Catherine N. Thigpen*
Sidney W. Degan, III (#4804)
Catherine N. Thigpen (#30001)
DEGAN, BLANCHARD & NASH
5555 Hilton Avenue, Suite 620
Baton Rouge, Louisiana 70808
Telephone:     (225) 610-1110
Facsimile:      (225) 610-1220
Email: sdegan@degan.com
           cthigpen@degan.com

Karl H. Schmid (#25241)
DEGAN, BLANCHARD & NASH
400 Poydras Street, Suite 2600
New Orleans, Louisiana 70130
Telephone:     (504) 529-3333
Facsimile:      (504) 529-3337
Email: kschmid@degan.com
***Attorneys for Plaintiff/Defendant-in-Counterclaim, Evanston Insurance Company***

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................................

I.      INTRODUCTION ..............................................................................................................

II.     FACTS ...............................................................................................................................

      A.      THE *VAN GEFFEN* LITIGATION ..........................................................................

      B.      THE INSTANT DECLARATORY JUDGMENT ACTION ....................................

      C.      THE EVANSTON POLICIES...................................................................................

III.    SUMMARY JUDGMENT STANDARDS ...........................................................................

IV.     LOUISIANA LAW REGARDING INTERPRETATION OF
      INSURANCE POLICIES .....................................................................................................

V.      ARGUMENT.......................................................................................................................

      A.      EVANSTON DOES NOT OWE A DUTY TO DEFEND OR INDEMNIFY
      RICELAND IN THE *VAN GEFFEN* LITIGATION BECAUSE THE
      POLLUTION EXCLUSIONS IN THE PRIMARY AND UMBRELLA
      POLICIES PRECLUDE COVERAGE....................................................................

            1.      Riceland is a "Polluter" Within the Meaning of the Exclusions...................

            2.      The Injury Causing Substances in the *Van Geffen* Litigation are
                 "Pollutants" Within the Meaning of the Evanston Policy
                 Exclusions ...................................................................................................

            3.      There Was a "Discharge, Dispersal, Seepage, Migration Release or
                 Escape" of a Pollutant Within the Meaning of the Policies...........................

      B.      THE LIMITED POLLUTION ENDORSEMENT DOES NOT APPLY,
      AND RICELAND HAS NOT MET THE CONDITIONS OF THE
      ENDORSEMENT.....................................................................................................

      C.      THERE IS NO COVERAGE FOR DAMAGE TO PROPERTY LEASED
      BY, AND/OR IN THE CARE, CUSTODY, AND CONTROL OF
      RICELAND .............................................................................................................

      D.      RICELAND'S CROSS CLAIM MUST BE DENIED AND DISMISSED..............

VI.     CONCLUSION....................................................................................................................

**TABLE OF AUTHORITIES**

**CASES:**

*Assumption Parish School Board v. Mt. Airy Ins. Co.,*
1995 WL 626151, 1995 U.S. Dist. LEXIS 15910 ...........................................................

*Blackburn v. National Union Fire Ins. Co. of Pittsburgh,*
00–2668 (La. 04/03/01), 784 So.2d 637 .........................................................................

*Bossier Plaza Assocs. v. National Union Fire Ins. Co. of Pittsburgh,*
35,741 (La. App. 2 Cir. 04/03/02), 813 So.2d 1114 ........................................................

*Coleman v. School Board of Richland Parish,*
418 F.3d 511 (5th Cir. 2005) .........................................................................................

*Doerr v. Mobile Oil Corp.,*
00-0947 (La. 12/19/00), 774 So.2d 119,
*opinion corrected on reh'g,* 00-0947 (La. 3/16/01), 782 So.2d 573 ..................................

*Domingue v. Reliance Ins. Co.,*
619 So.2d 1220 (La. App. 3rd Cir.1993) .........................................................................

*Evanston Ins. Co. v. Lapolla Indus., Inc.,*
93 F.Supp.3d 606 (S.D. Tex. 2015) .................................................................................

*Fleming Novelty, Inc. v. Alexander,*
34,346 (La. App. 2 Cir. 12/20/00), 775 So.2d 643,
*writ denied,* 01–0239 (La. 03/23/01), 787 So.2d 1002 .....................................................

*Garcia v. Saint Bernard Parish Sch. Bd.,*
576 So.2d 975 (La. 1991) ...............................................................................................

*Goldman v. Doe,*
12-531 (La. App. 5 Cir. 3/27/13), 113 So.3d 376.............................................................

*Grefer v. Travelers Ins. Co.,*
04-1428 (La. App. 5 Cir. 12/16/05), 919 So.2d 758.........................................................

*Hill v. Shelter Mut. Ins. Co.,*
05-1783, 05-1818 (La. 7/10/06), 935 So.2d 691...............................................................

*Lamar Advert. Co. v. Liberty Mut. Fire Ins. Co.,*
2011 WL 2648483 (M.D. La. 07/06/11)...........................................................................

*Ledbetter v. Concord Gen. Corp.*,
95-809 (La. 1/6/96), 665 So.2d 1166,
*amended on other grounds*, 95-809 (La. 4/18/96), 671 So.2d 915 ...................................................

*Lodwick, LLC v. Chevron USA, Inc.*,
48,312 (La. App. 2 Cir. 10/2/13), 126 So.3d 544,
*writ denied*, 13-2898 (La. 2/28/14), 134 So.3d 1176 ......................................................................

*Marin v. Exxon Mobil Corp.*,
09-2368 (La. 10/19/10) 48 So.3d 234 ..............................................................................................

*Mossy Motors, Inc. v. Cameras America*,
04-0726 (La. App. 4 Cir.), 898 So.2d 602,
*writ denied*, 05-1181 (La. 12/09/05), 916 So.2d 1057 ....................................................................

*Orazio v. Henderson*,
01-28 (La. App. 3 Cir. 7/11/01), 790 So.2d 754 .............................................................................

*Pro-Boll Chem. & Fertilizer Co. v. U.S. Fire & Guar. Co.*,
2004 WL 3494045 (W.D. La. 11/15/04) ..........................................................................................

*Sensebe v. Canal Indem. Co.*,
10-703 (La. 1/28/11), 58 So.3d 441 .................................................................................................

*Shocklee v. Massachusetts Mut. Life Ins. Co.*,
369 F.3d 437 (5th Cir. 2004) ...........................................................................................................

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*,
73 F.3d 546 (5th Cir. 1996) ...............................................................................................................

*St. Paul Fire and Marine Ins. Co. v. Warwick Dyeing Corp.*,
26 F.3d 1195 (1st Cir. 1994) .............................................................................................................

*Thomas W. Hooley & Sons v. Zurich Gen. Acc. and Liab. Ins. Co.*,
235 La. 289, 103 So.2d 449 (1958) ..................................................................................................

*U.S. F & G v. B & B Oil Well Service, Inc.*,
910 F.Supp. 1172 (S.D. Ms. 6/12/95) ..............................................................................................

*United States Fidelity & Guar. Co. v. T.K. Stanley, Inc.*,
764 F. Supp. 81 (S.D. Ms. 1991) .....................................................................................................

*Vallier v. Oilfield Constr. Co.*,
483 So.2d 212 (La. Ct. App. 1986) ..................................................................................................

*Vaughn v. Franklin*,
00-291 (La. App. 1 Cir.), 785 So.2d 79,
*writ denied*, 01-1551 (La. 10/05/01), 798 So.2d 969........................................................................

## **STATUTES:**

40 C.F.R. § 401.15 ........................................................................................................................

La. Rev. Stat. § 30:29........................................................................................................................

La. Civ. Code art. 1983........................................................................................................................

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON BEHALF OF
EVANSTON INSURANCE COMPANY**

Mover, Evanston Insurance Company ("Evanston"), by and through undersigned counsel hereby files this Memorandum of Law in Support of its Motion for Summary Judgment.

## I.      INTRODUCTION

Defendant, Riceland Petroleum Company ("Riceland"), is a named insured under Evanston Oil and Gas Industries Liability policies, for two consecutive policy periods from March 21, 2000 through March 21, 2002 (the "primary policies"), and two umbrella or excess policies, for the same policy periods.  *See* Ex. 1, 2, 3, 4.[1]  Riceland was sued in underlying litigation entitled *Van Geffen Bros., LLC, et al. v. ConocoPhillips Company, et al.*, currently pending in the 31st Judicial District Court for the Parish of Jefferson Davis, State of Louisiana ("the *Van Geffen* litigation"), and requested insurance coverage and defense costs from Evanston, for its exposure in the *Van Geffen* litigation, and under the aforementioned policies.

Evanston filed the instant Complaint for Declaratory Relief, Rec. Doc. 1, seeking a determination that Evanston's policies do not provide any coverage for the alleged liability of Riceland in the *Van Geffen* litigation, and also, that Evanston has no obligation to defend Riceland in the *Van Geffen* litigation.  Evanston now files the instant Motion for Summary Judgment for declaratory relief praying for a ruling, as a matter of law, that:

> (1)      Evanston does not owe a duty to defend or indemnify Riceland in the *Van Geffen* litigation because the pollution exclusions of the Primary and the Umbrella Liability Policies apply to preclude coverage for the long-term, environmental pollution damage alleged by plaintiffs in the *Van Geffen* lawsuit;

---

[1]  Attached hereto are full and certified copies of the policies at issue including:  Ex. 1. - Evanston Oil and Gas Industries Liabilities Policy No. 00GLP5000094 (March 21, 2000 through March 21, 2001); Ex. 2. - Evanston Oil and Gas Industries Liabilities Policy No. 01GLP5000251 (March 21, 2001 through March 21, 2002); Ex. 3. - Evanston Commercial Umbrella Liability Policy No. CUER105900 (March 21, 2000 through March 21, 2001); and Ex. 4. - Evanston Commercial Umbrella Liability Policy No. CUER116601 (March 21, 2001 through March 21, 2002).  See also Affidavit of Suzanne Braun, attached hereto as Ex. 7, in which Ms. Braun certifies Evanston Policies.

1

(2)     The *Van Geffen* lawsuit does not trigger Evanston's "Coverage D-Bodily Injury and Property Damage-Oil and Gas Limited Pollution" endorsement in the Primary Policies, and Riceland has not met the conditions of the endorsement; and

(3)     There is no coverage for damage to property leased by Riceland and/or in the care, custody, and control of Riceland based on the Leased Property/Care, Custody and Control Exclusions in the Evanston Policies.

As explained below, Evanston has no obligation to indemnify or defend Riceland in the *Van Geffen* litigation based on the relevant pollution exclusions in the Evanston Policies, the absence of coverage under the "Coverage D-Bodily Injury and Property Damage-Oil and Limited Pollution" endorsement in the Primary Policies, and the relevant Leased Property/Care, Custody and Control exclusions.  As such, this Motion for Summary Judgment Should be granted.  For the same reasons, Riceland's Cross Claim, Rec. Doc. 6, seeking a ruling that Evanston does owe an obligation to indemnify, and has a duty to defend Riceland in the *Van Geffen* litigation, should be dismissed.

## II.     FACTS

### A.     THE *VAN GEFFEN* LITIGATION

Van Geffen Bros., LLC, and other plaintiffs, filed a Petition for Damages in the 31st Judicial District Court for the Parish of Jefferson Davis, State of Louisiana, against Riceland and other oil and gas companies, in a "legacy lawsuit" alleging pollution and environmental contamination caused by defendants' oil and gas exploration and production activities on their properties.  *See Van Geffen* petitions, attached as Ex. 5, *in globo*.  This, and similar lawsuits were filed by landowners or the descendants, heirs, assignees, and others, against multiple oil and gas production companies in Louisiana, for environmental contamination of the plaintiffs' properties by pollutants, over several years or even decades. Ex. 5(a) (Petition for Damages).

2

The *Van Geffen* plaintiffs allege that their properties have been contaminated by pollutants as a result of Riceland's and other defendants' oil and gas exploration and production activities on the properties. This includes the operation or construction of various oil and gas facilities, including pits, wells, sumps, flowlines, pipelines, tank batteries, wellheads, measuring facilities, separators and injection facilities. Ex. 5(a) at ¶ 5. The *Van Geffen* plaintiffs also allegedly suffered damages resulting from the improper disposal of oilfield wastes in unlined earthen pits, constructed by Riceland and other defendants, on or near their properties during the course of oil and gas exploration and production activities. *See* Ex. 5(a) at ¶¶ 7-11. The oilfield wastes deposited in these pits include such substances as naturally occurring radioactive material ("NORM"), produced water, drilling fluids, chlorides, hydrocarbons, and heavy metals. *Id.* Other toxic and hazardous substances allegedly used by Riceland and other defendants in their day to day exploration and production activities include mercury, lead based compounds, chromium based algicides, hydrochloric acid, caustic soda, and various corrosion inhibitors. *Id.*

The *Van Geffen* plaintiffs allege that leaks, spills, and other surface and subsurface discharges of these and other substances from wells, pipelines, tank batteries, gas plants and other equipment or facilities have polluted the surface and subsurface of the properties. They also allege that Riceland's and other defendants' failure to timely remove or remediate this "toxic pollution" in the soils and groundwater of the properties has allowed the pollution to "migrate and spread." The *Van Geffen* plaintiffs also allege that the pollution has now permanently damaged the drinking water and other aquifers underlying the properties. *See* Ex. 5(a) at ¶¶ 12-17.

The *Van Geffen* plaintiffs assert various causes of action, but all arise from the activities of the defendants which allegedly resulted in contamination of their properties by pollutants as a

result of defendants' oil and gas related activities.  *See* Ex. 5(a) at ¶¶ 15-36.[2]

### B.    THE INSTANT DECLARATORY JUDGMENT ACTION

Evanston filed the instant declaratory judgment action, ultimately seeking a declaration that it has no duty to defend or indemnify Riceland in the *Van Geffen* litigation, as well as other relief.  Rec. Doc. 1.  Riceland has filed a cross claim in this matter, in which it requests that Evanston be ordered to provide Riceland with a legal defense in the *Van Geffen* matter, and that Evanston be ordered to indemnify Riceland for any liability assessed against Riceland in the *Van Geffen* litigation. Rec. Doc. 6.

### C.    THE EVANSTON POLICIES

Evanston issued Oil and Gas Industries Liabilities Policy Nos. 00GLP5000094, Ex. 1, and 01GLP5000251, Ex. 2, to Riceland for the periods of March 21, 2000 through March 21, 2001 and March 21, 2001 through March 21, 2002, respectively (the "Primary Policies").[3]   Evanston also issued Commercial Umbrella Liability Policy Nos. CUER105900 Ex. 3, and CUER116601 Ex. 4, to Riceland for the periods of March 21, 2000 through March 21, 2001 and March 21, 2001 through March 21, 2002, respectively (the "Umbrella Policies").  The policies are attached hereto, and the relevant policy provisions are recited, below.

## III.   SUMMARY JUDGMENT STANDARDS

Summary Judgment is appropriate when the pleadings, depositions, answers to interrogatories and admissions indicate that there is no genuine issue of material fact and that the

---

[2] The *Van Geffen* plaintiffs seek damages, including compensatory damages including the costs to restore the land to an unpolluted state; punitive and exemplary damages for storage and handling of hazardous and toxic substances; costs for an environmental assessment; restoration damages; diminution in value; remediation, and the like.  *See* Ex. 5(a) at ¶49.

[3]  The Primary Policies contain the following limits:  $1,000,000 "each occurrence" limit ($2,000,000 general aggregate, other than Products-Completed Operation); $1,000,000 Pollution Aggregate limit; and $1,000,000 Products-Completed Operations[3] Aggregate limit.  *See* Ex. 1, 2.  The Primary Policies also provide a $1,000,000 limit for Underground Resources and Equipment Coverage.  Ex. 1, 2.

moving party is entitled to judgment as a matter of law.[4]  Coverage under an insurance policy is a

legal issue that can properly be resolved within the framework of a motion for summary judgment.[5]

Although the court considers the evidence in the light most favorable to the non-moving

party, the non-moving party may not merely rest on allegations set forth in the pleadings. Instead,

the non-moving party must show that there is a genuine issue for trial.[6]  Conclusory allegations

and unsubstantiated assertions will not satisfy the non-moving party's burden.[7]  If, once the non-

moving party has been given the opportunity to raise a genuine factual issue, no reasonable juror

could find for the non-moving party, Summary Judgment will be granted for the moving party.[8]

Summary Judgment is a particularly appropriate procedure when considering and

determining insurance coverage issues under Louisiana law.[9]  A dispute as to the issue of whether,

as a matter of law, the language of an insurance policy provides coverage to a party, can properly

be resolved within the context of a motion for summary judgment.[10]

## IV.  LOUISIANA LAW REGARDING INTERPRETATION OF INSURANCE POLICIES

Under Louisiana law, "an insurance policy is a contract that must be construed in

accordance with the general rules of interpretation of contracts set forth in the Louisiana Civil

Code."[11]  "An insurance policy is an agreement between the parties and should be interpreted by

using ordinary contract principles."[12]  Additionally, "[t]he contract has the effect of law for the

---

[4] *See, Shocklee v. Massachusetts Mut. Life Ins. Co*., No. CIV.A. 00-279-D-M1, 2003 WL 25739169, at *1 (M.D. La. April 28, 2003), *aff'd*, 369 F.3d 437 (5th Cir. 2004).
[5]  *See, Lamar Advert. Co. v. Liberty Mut. Fire Ins. Co*., No. CIV.A. 10-620-JJB, 2011 WL 2648483, at *1 (M.D. La. July 6, 2011).
[6]  *See, id.*
[7]  *See, id.*
[8]  *See, id.*
[9]  *Sensebe v. Canal Indem. Co.*, 10-703 (La. 1/28/11), 58 So.3d 441.
[10] *Domingue v. Reliance Ins. Co*., 619 So.2d 1220, 1223 (La. App. 3rd Cir. 1993); *Goldman v. Doe*, 12-531 (La. App. 5 Cir. 3/27/13), 113 So.3d 376, 380.
[11] *Coleman v. School Board of Richland Parish*, 418 F.3d 511, 516 (5th Cir. 2005).
[12] *Orazio v. Henderson*, 01-28, p. 2 (La. App. 3 Cir. 7/11/01), 790 So.2d 754, 755 (quoting *Ledbetter v. Concord Gen. Corp.*, 95-809, p. 3 (La. 1/6/96), 665 So.2d 1166, 1169, *amended on other grounds*, 95-809 (La. 4/18/96), 671 So.2d

parties. La. Civ. Code art. 1983."[13] When the language in an insurance contract is clear and explicit, no further interpretation may be made in search of the party's intent.[14]

An insurance policy "should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." The parties' intent, as reflected by the words of the policy, determines the extent of the coverage.[15] If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written.[16] A court should not strain to find ambiguity in a policy where none exists.[17]

With respect to coverage, the insured bears the burden of proving that the incident giving rise to a claim falls within the policy's terms.[18] However, "the insurer bears the burden of proving the applicability of an exclusionary clause within the policy."[19] Exclusionary provisions must be read together with the entire policy, and are construed strictly against the insurer and in favor of coverage.[20]

As to the duty to defend, Louisiana is an "eight corners" state where the duty to defend is determined solely by the allegations of the underlying petition and the terms and conditions of the relevant policy.[21] The application of the eight corners rule calls for a court to compare the "four

---

915).

[13] *Id.*

[14] *Hill v. Shelter Mut. Ins. Co.*, 05–1783, 05-1818 (La. 7/10/06), 935 So.2d 691.

[15] *See e.g., Blackburn v. National Union Fire Ins. Co. of Pittsburgh*, 2000–2668 (La. 04/03/01), 784 So.2d 637, 641; *Mossy Motors, Inc. v. Cameras America*, 2004–0726 (La.App. 4th Cir. 03/02/05), 898 So.2d 602, 605, *writ denied*, 2005–1181 (La.12/09/05), 916 So.2d 1057.

[16] *Bossier Plaza Assocs. v. National Union Fire Ins. Co. of Pittsburgh*, 35,741 (La. App. 2d Cir. 04/03/02), 813 So.2d 1114, 1119.

[17] *Fleming Novelty, Inc. v. Alexander*, 34,346 (La. App. 2d Cir. 12/20/00), 775 So.2d 643, *writ denied*, 2001–0239 (La. 03/23/01), 787 So.2d 1002; *Mossy Motors, supra.*

[18] *Coleman*, 418 F.3d at 517-18.

[19] *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La. 2000).

[20] *Garcia v. Saint Bernard Parish Sch. Bd.*, 576 So.2d 975, 976 (La. 1991); *Vallier v. Oilfield Constr. Co.*, 483 So.2d 212, 215 (La.Ct.App.1986).

[21] *Vaughn v. Franklin*, 2000–291, pg. 5 (La. App. 1st Cir. 03/28/01), 785 So.2d 79, 84, *writ denied*, 2001–1551 (La. 10/05/01), 798 So.2d 969.

corners" of plaintiffs' petition against the "four corners" of the insurance policy and determine whether the claims, liberally interpreted and taken as true, fall within the scope of the duty to defend. "If there is no reasonable interpretation of the policy, when applied to the undisputed facts shown by the evidence supporting the motion, under which coverage should be afforded, summary judgment will be proper, and there will be no duty to defend."[22]

## V. ARGUMENT

### A. EVANSTON DOES NOT OWE A DUTY TO DEFEND OR INDEMNIFY RICELAND IN THE *VAN GEFFEN* LITIGATION BECAUSE THE POLLUTION EXCLUSIONS IN THE PRIMARY AND UMBRELLA POLICIES PRECLUDE COVERAGE.

Coverage A under the Evanston Primary Policies, as well as the Umbrella Policies, contain almost identical pollution exclusions, which preclude coverage for property damage "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants'" and "any loss, cost or expense arising out of any: (a) request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of 'pollutants.'" Ex. 1, 2, 3, 4. The Primary Policies provide:

**SECTION I - COVERAGES**

**COVERAGE A. <u>BODILY INJURY AND PROPERTY DAMAGE LIABILITY</u>**

**1) INSURING AGREEMENT**

A) We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'[23] or 'property damage'[24] to which this insurance applies. We will have the right and duty to defend any 'suit'

---

[22] *Lodwick, LLC v. Chevron USA*, Inc., 48,312 (La. App. 2nd Cir. 10/2/13), 126 So.3d 544, 550, *writ denied*, 2013-2898 (La. 2/28/14), 134 So.3d 1176.

[23] "Bodily injury" means "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. 'Bodily injury' also includes disability, mental anguish, mental injury, shock or fright resulting in or from otherwise covered 'bodily injury.'" Ex. 1 and Ex. 2.

[24] "Property damage" means "A) physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or B) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." Ex. 1 and Ex. 2.

seeking those damages.   We may at our discretion investigate any 'occurrence'[25] and settle any 'claim' or 'suit' that may result**.** But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A., B. or D. or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS-COVERAGES A., B. and D.

B) This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an occurrence that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

C) Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

* * *

## 2) EXCLUSIONS

This insurance does not apply to:

* * *

## F) POLLUTION

(1) 'Bodily Injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'[26]

(2) Any loss, cost or expense arising out of any:

(a) request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of 'pollutants'; or

(b) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in

---

[25]   "Occurrence" means "an accident, including continuous repeated exposure to substantially the same general harmful conditions." Ex. 1 and Ex. 2.

[26] The term "pollutants" is defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.  Ex. 1 and Ex. 2.

any way responding to, or assessing the effects of 'pollutants.'

\* \* \*

Ex. 1 and Ex. 2.  The Umbrella Policies provide:

## SECTION I - INSURING AGREEMENTS

### Occurrence and Claims-Made Coverage

A.    This insurance applies to "bodily injury," "property damage,"[27]….written on an "occurrence" basis, but only if:

1.    The "bodily injury" or "property damage" was caused by an "occurrence,"…;[28]

2.    The "occurrence" or "offense" took place in the "coverage territory," and

3.    The "bodily injury," "property damage,"…occurred during the policy period  of this policy.

\*\*\*

It is agreed that:

\*\*\*

3.    "Property damage" that is loss of use of tangible property that is not physically injured or destroyed shall be deemed to occur at the time of the "occurrence" that caused it.[29]

\*\*\*

## Coverage A - Bodily Injury and Property Damages Liability

A.    Insuring Agreement

We will pay on behalf of the insured for that portion of "ultimate net loss"[30] in excess of the "retained limit"[31] because of "bodily injury" or "property damage" to which this insurance applies, but only up to the Limits of Insurance stated in Item

---

[27] "Property damage" means "A) physical injury to tangible property, including all resulting loss of use of that property or B) Loss of use of tangible property that is not physically injured or destroyed." Ex. 3 and Ex. 4.

[28]  The term "occurrence" is defined as "[w]ith respect to 'bodily injury' or 'property damage' liability, an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Ex. 3 and Ex. 4.

[29] The insuring agreement also contains a section for claims-made coverage.  However, the claims-made coverage under the Umbrella Policies is only applicable if the underlying insurance provides claims-made coverage.  As discussed above, the Primary Policies are occurrence-based policies.

[30]  The term "ultimate net loss" is defined as "the total amount of damages for which the insured is legally liable in payment of… 'property damage'…. 'Ultimate net loss' may be established by adjudication, arbitration, or a compromise settlement to which we have previously agreed in writing.  'Ultimate net loss' shall be reduced by any recoveries or salvages which have been paid or will be collected, but the amount of 'ultimate net loss' shall not include any expenses incurred by any insured, by us, or by any 'underlying insurer.'" Ex. 3 and Ex. 4.

[31]  The term "'retained limit' means the greater of: a.  That amount of 'underlying insurance' applicable to a 'claim' or 'suit,' whether such 'underlying insurance' is collectible or not; or b. The amount of the 'self-insured retention' as shown in Item 3. of the Declarations of this policy for 'claims' or 'suits' not covered by applicable 'underlying insurance.'" Ex. 3 and Ex. 4.

9

3. of the Declarations.  No other obligations or liability to pay sums or performed acts or services is covered unless explicitly provided for under SECTION II-DEFENSE AND SUPPLEMENTARY PAYMENTS-COVERAGE A and B.

*** 

## POLLUTION ENDORSEMENT – FOLLOWING FORM

It is hereby agreed that exclusion 1., Section I, Coverage A and B – Policy Exclusions, is deleted in its entirety and replaced by the following:

1.  Bodily injury, property damage, personal injury or advertising injury out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants; or

2.  Any loss, cost or expense arising out of any:

    a.  request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    b.  claim or suit or on behalf of any person, organization or governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of pollutants.

This exclusion does not apply to bodily injury, property damage, personal injury or advertising injury if such liability is covered by underlying insurance shown in the schedule below for the full limit shown and then only for such liability for which coverage is provided.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste derived from any source, and including but not limited to petroleum derivative products which contaminate, pollute and/or defile any physical substance or matter.  Waste includes materials to be recycled, reconditioned, reclaimed or disposed of.

* * *

Ex. 3 and Ex. 4.

The *Van Geffen* plaintiffs allege that Riceland, and others, caused pollution damages and contamination, with multiple pollutants, on their properties, resulting from the oil and gas operations of Riceland, and others. Ex. 5(a).  For purposes of determining coverage, the court must accept as true the allegations in the *Van Geffen* petitions. As such, it is clear that the theories of recovery and allegations, as they pertain to Riceland, all arise from, and are the direct result, of long-term contamination and pollution damages.

10

It is well-established in Louisiana that pollution exclusions contained in liability policies will be enforced to exclude coverage for active, industrial, environmental polluters when those businesses knowingly emit pollutants over extended periods of time. *See Lodwick, LLC v. Chevron USA*, *Inc*., 48,312 (La. App. 2nd Cir. 10/2/13), 126 So.3d 544, 550, *writ denied*, 2013-2898 (La. 2/28/14), 134 So.3d 1176*; Doerr v. Mobile Oil Corp.,* 2000-0947 (La. 12/19/00), 774 So.2d 119, *opinion corrected on reh'g*, 2000-0947 (La. 3/16/01), 782 So.2d 573; *Grefer v. Travelers Ins. Co.*, 04-1428 (La. App. 5 Cir. 12/16/05), 919 So.2d 758, 766 ("The *Doerr* Court held that the total pollution exclusion of a commercial general liability (CGL) insurance policy is not designed or intended to be read strictly to exclude coverage for all interactions with irritants or contaminants of any kind; rather, it must be construed in light of its general purpose, *which is to exclude coverage for environmental pollution.*)(Emphasis in original.).

In *Doerr,* the Louisiana Supreme Court detoured from its previous stance that total pollution exclusions were intended to be read strictly to exclude coverage for all interactions with irritants or contaminants. Rather, the court narrowed its application of the exclusions and clarified that the purpose of the pollution exclusion was to exclude coverage for *environmental* pollution. The decision also discussed the origin of pollution exclusions, environmental protection standards, and imposing the full risk of loss due to personal injury or property damage from pollution *upon the polluter* by *eliminating the option of spreading that risk through insurance coverage. Doerr,* 774 So.2d at 126-128; *Lodwick*, 126 So.3d at 560.  The *Doerr* decision, in particular, makes clear the long term and industrial polluters have no expectation of coverage under an ordinary commercial policy. *Id.*

*Lodwick* built upon these principles and expressly found that identical policy exclusions were unambiguous and enforceable in the context of a similar "legacy lawsuit."  Notably, the

*Lodwick* Court applied the exclusions, as written, to preclude coverage for long-term environmental pollution and contamination. *Lodwick,* 126 So.3d at 550-60. The court then addressed how its ruling was supported under *Doerr.* *Id.* at 560-61. The *Lodwick* case is instructive and relevant because it involved identical "legacy lawsuit" allegations involving pollution to the plaintiffs' properties by oil and gas companies, and multiple insurers with very similar or identical pollution exclusions.[32] As here, the insured in *Lodwick* filed third-party demands for indemnification and defense against its insurers. The trial court rendered judgment, in part, granting *the insured's* motion for partial summary judgment against two insurers finding potential coverage and the duty to defend. The insurers appealed, and the Louisiana Second Circuit Court of Appeal *reversed*, holding that the pollution exclusions in several insurance policies and excess policies unambiguously applied to preclude coverage, and, hence, there was no duty to defend.[33]

The *Lodwick* Court noted that the lawsuit alleged damages arising from pollution, even though the insured argued that claims of breach of contract and trespass, and other ostensible causes of action were also asserted, which prompted the trial court to refuse to find that there was

---

[32] "This case involves a 'legacy lawsuit' by a group of land owners against a group of oil and gas operators who have worked in and around the Bellevue Field in Bossier Parish since the 1930s. Plaintiffs ... [are] seeking damages related to defendants' oil and gas production and exploration activities. These activities include the construction and operation of pits, wells, sumps, pipelines, flow lines, tank batteries, well heads, measuring facilities, separators, and injection facilities. Plaintiffs allege that the operation of these facilities, including the spillage and/or disposal of toxic oil field wastes, caused pollution damages on or adjacent to their property. ... It was these facilities along with the wells that plaintiffs allege are sources of pollution which have migrated and caused damage to the soils and ground waters underlying plaintiffs' property." *Lodwick,* 126 So.3d at 456.

[33] While, strictly speaking, *Lodwick* questioned the duty to defend, issues of insurance coverage were inexorably involved. As the court wrote: "An insurer's duty to defend suits against its insured is broader than its liability for damage claims. The duty to defend is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. ... An insurer's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. ... If assuming all the allegations of the petition to be true, there would be both coverage under the policy and liability of the insured to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. .... *If there is no reasonable interpretation of the policy, when applied to the undisputed facts shown by the evidence supporting the motion, under which coverage should be afforded, summary judgment will be proper, and there will be no duty to defend.*" *Lodwick,* 126 So.3d at 550 (citations omitted, emphasis added).

no coverage for *all claims*. *See Lodwick,* 129 So.3d at 550-51.  The court resolutely disagreed, aptly finding that the central allegations involved the depositing of waste and pollutants, including "NORM", produced water, drilling fluids, chlorides, hydrocarbons and heavy metals; failure to responsibly remove this "toxic pollution" from the soil and groundwater, and migration of the pollutants, under theories of trespass, statutory violations (La. R.S. 30:29), violation of industry practices, tort, breach of contract, nuisance, unjust enrichment, and other theories.  *Id.* at 551.  The demand for damages all focused on the seepage and migration of pollutants, not simple surface related disturbances such as removal of trees or damage to topsoil.  Though multiple theories, statutes and remedies were invoked, the court had no problem in concluding that "the plaintiffs' petition is solely based on pollution."  *Id.* at 552.

The *Lodwick* Court then considered the pollution exclusions in various policies and held, with respect to one insurer's (Admiral's) policy:

> If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. Additionally, we must not strain to find ambiguity in a policy where none exists. When compared against plaintiffs' petition for damages, we find that coverage is unambiguously excluded under the clear terms of the Admiral policy. There is no question that this legacy lawsuit would not have arisen but for the "actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants." There is also no question that NORM, produced water, drilling fluids, chlorides, hydrocarbons, and heavy metals fall within the definition of pollutants as defined in the policy. These materials are at the very least contaminants, chemicals, or wastes. Therefore, we find that coverage is unambiguously excluded based on the clear terms of the pollution exclusion, and accordingly, Admiral owes no duty to defend Oracle in the instant matter.

*Lodwick,* at 554.

The *Lodwick* Court also rejected the insured's argument that such a ruling would be contrary to *Doerr*:

> [In *Doerr*] the court narrowed its application of the exclusions and clarified that *the purpose of the pollution exclusion was to exclude coverage for environmental pollution*. It was also meant to *strengthen environmental protection*

*standards* by *imposing the full risk of loss due to personal injury or property damage from pollution upon the polluter by eliminating the option of spreading that risk through insurance coverage*. In its reasoning, the court explained that pollution exclusions were born out of the environmental movement of the 1970s and were shaped in response to legislation designed to prompt the cleanup of hazardous waste sites and impose cleanup costs on responsible parties. Notably, *Doerr* did not involve the type of claims for which the exclusion was designed; it was a personal injury case, not an environmental pollution case as alleged here. Thus, guided by the principles set forth in *Doerr*, we find that *when long term pollution damages are alleged, such as the case with legacy lawsuits, pollution exclusions are applicable to exclude coverage. As stated in Doerr, this is the very purpose of a pollution exclusion. Id*. at 127.

*Lodwick*, 126 So.3d at 560 (emphasis added).

Thus, in applying Louisiana law, this Honorable Court is aptly guided by Louisiana state court decisions from the Louisiana Courts of Appeal and the Louisiana Supreme Court, and most pertinently, by the very recent and directly applicable *Lodwick* ruling, incorporating the rulings of both *Doerr* and *Grefer,* as cited herein.[34]

In *Doerr,* the Louisiana Supreme Court set forth a three part test to determine if a pollution exclusion bars coverage:

1) whether the insured is a "polluter" within the meaning of the exclusion;

2) whether the injury causing substance is a "pollutant" within the meaning of the exclusion; and

3) whether there was a "discharge, dispersal, seepage, migration release or escape" of a pollutant within the meaning of the policy.

*Doerr,* 774 So.2d at 135.  Under both *Lodwick* and *Doerr,* the Evanston Pollution Exclusions apply, and preclude coverage for Riceland in the *Van Geffen* litigation because all three elements of the *Doerr* test are established.

---

[34] Of additional note, in *Evanston Ins. Co. v. Lapolla Indus., Inc.,* 93 F.Supp. 3d 606 (S.D. Tex. 2015), the court, applying Texas law, found an identical pollution exclusion unambiguous and enforceable, in a declaratory action brought by Evanston, relating to the insured's use of spray polyurethane foam insulation which injured homeowners. The court held that Evanston had no duty to defend the underlying lawsuit.

### 1.      Riceland is a "polluter" within the meaning of the exclusions.

Determination of the first *Doerr* factor "is a fact-based conclusion that should encompass consideration of a wide variety of factors. In making this determination, the trier of fact should consider the nature of the insured's business, whether that type of business presents a risk of pollution, whether the insured has a separate policy covering the disputed claim, whether the insured should have known from a read of the exclusion that a separate policy covering pollution damages would be necessary for the insured's business, who the insurer typically insures, any other claims made under the policy, and any other factor the trier of fact deems relevant to this conclusion."  *Doerr,* 774 So.2d at 135.  The nature of the insured's business and whether the insured's business presents a risk of pollution are the most important factors in the "polluter" test.[35]

Here, Riceland is alleged to have engaged in oil and gas exploration activities on the *Van Geffen* litigation properties. Ex. 5(a) at ¶¶ 2-3, 5-21, *et seq.*  As in *Lodwick,* the *Van Geffen* plaintiffs allege that defendants, including Riceland, are oilfield operators and producers. Louisiana jurisprudence has established that oilfield operators and producers are "polluters" due to the fact that oil drilling and related activities present a clear and obvious risk of pollution. *Lodwick,* 126 So.3d at 561.  *See also, Grefer*, 919 So.2d at 768–69;[36] *Pro-Boll Chem. & Fertilizer Co. v. U.S. Fire & Guar. Co.*, No. CIV.A. 01-1531, 2004 WL 3494045, at *7 (W.D. La. Nov. 15, 2004) (applying *Doerr* to a case involving long term environmental discharge of pesticides).  Thus, the first element of the *Doerr* test is satisfied.

---

[35] *Grefer v. Travelers Ins. Co.,* 04–1428 (La. App. 5 Cir. 12/16/05), 919 So.2d 758.
[36] "Oil drilling and related activities present a clear and obvious risk of pollution. The cleaning of used oil field drill pipe is an oil extraction related activity. Materials extracted from the ground through oilfield drill pipe, such as oil, sludge, grease, salt water, and other hazardous and/or toxic oil production waste, are all potential pollutants.  ..."

      2.      **The injury causing substances in the *Van Geffen* litigation are "pollutants" within the meaning of the Evanston policy exclusions.****

The second prong of the *Doerr* test is whether the injury-causing substance is a "pollutant." *Doerr,* 774 So.2d at 135.  Under pollution exclusions similar to the Evanston provisions, courts have found "pollutant" to include everything from asbestos, carbon monoxide, gasoline, lead paint, and some pesticides. *Id*.  When making this determination, "the trier of fact should consider the nature of the injury-causing substance, its typical usage, the quantity of the discharge, whether the substance was being used for its intended purpose when the injury took place, whether the substance is one that would be viewed as a pollutant as the term is generally understood, and any other factor the trier of fact deems relevant to that conclusion."  *Id.*

The *Van Geffen* petitions allege soil and water contamination with oilfield wastes, including NORM, produced water, drilling fluids, chlorides, hydrocarbons, and heavy metals.  Ex. 5(a) at ¶¶ 5-11.  Such substances are clearly pollutants.  *See Lodwick, Grefer*.  Other toxic and hazardous substances allegedly used by Riceland and others in their day to day exploration and production activities include mercury, lead based compounds, chromium based algicides, hydrochloric acid, caustic soda, and various corrosion inhibitors. *Id*.  The *Van Geffen* plaintiffs allege that leaks, spills, and other surface and subsurface discharges of these and other substances from wells, pipelines, tank batteries, gas plants and other equipment or facilities have further polluted the surface and subsurface of the subject properties.  *Id.*  These are the very same toxins and pollutants that the court in *Lodwick* found to constitute "pollutants" within the meaning of the total pollution exclusion.  *Lodwick,* 126 So.3d at 551-52, 554, 560-61.  *See also, Grefer,* 919 So.2d at 771.[37]

---

[37] "The trial court in CDC found that NORM was clearly a pollutant. The trial court in this case adopted that finding, and no party appeals it.  Other courts have also come to the same conclusion. *See U.S. F & G v. B & B Oil Well Service, Inc*., 910 F.Supp. 1172 (S.D. Miss. 6/12/95) (trial court has "no difficulty in concluding that NORM is, in

All of these substances, as is easily ascertainable from the facts of the petition and the nature of the lawsuit, are pollutants, as defined by law in similar cases, and they also fall squarely within the Evanston primary policies' definition of "Pollutants" under Coverage A (*i.e.*, "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.   Waste includes materials to be recycled, reconditioned or reclaimed." Ex. 1 and Ex. 2.   Likewise, the substances fall under the Umbrella Policies' definition of "Pollutants" (*i.e.*, "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste derived from any source, and including but not limited to petroleum derivative products which contaminate, pollute and/or defile any physical substance or matter.   Waste includes materials to be recycled, reconditioned, reclaimed or disposed of.").   Ex. 3 and Ex. 4.

The *Grefer* Court has already ruled that oil and gas production-related byproducts and waste - such as oil, sludge, grease, salt water, and other hazardous and/or toxic oil production wastes - as well as NORM and drilling fluids, meet the definition of "pollutant" as was contemplated by the court in *Doerr*.[38]   Louisiana courts have also held that "produced water" - a term used to describe the waste byproduct of the extraction of oil and gas from wells - is a "pollutant."[39]   Louisiana courts have likewise held that hydrocarbons and heavy metals (as they relate to oil and gas exploration/production) were "pollutants" under a policy that contained a definition of that term almost identical to the policy at issue.[40]

---

fact, a pollutant within the policy's definition of that term.").
[38] *Id*. at 768-769, 771.
[39] *Marin v. Exxon Mobil Corp*., 2009-2368 (La. 10/19/10), 48 So.3d 234, 270.  *See also Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc*., 73 F.3d 546, 568-569 (5th Cir. 1996).
[40] *See Lodwick, L.L.C. v. Chevron U.S.A., Inc*., 48,312 (La. App. 2 Cir. 10/2/13), 126 So.3d 544, 554, *reh'g denied,* (Nov. 14, 2013), *writ denied* (citation omitted) (There is also no question that NORM, produced water, drilling fluids, chlorides, hydrocarbons, and heavy metals fall within the definition of pollutants as defined in the policy.).

The *Van Geffen* plaintiffs also allege that their properties were contaminated by other toxic and hazardous substances including mercury and lead-based compounds. Ex. 5(a) at ¶¶ 9-11. Mercury and its compounds, lead and its compounds, and chromium and its compounds are all considered by the Environmental Protection Agency to be toxic pollutants.[41] The *Lodwick* case applied the exclusion in the same scenario; a legacy lawsuit alleging environmental pollution from oil and gas producers, and claims involving the same types of pollutants and similar policy language.

With regard to the "quantity of discharge," plaintiffs allege that these substances have leaked/migrated onto plaintiffs' properties for *many years* and *continue to leak/migrate*. *See* Ex. 5(a). Such allegations suggest that a large quantity of these substances have been discharged onto plaintiffs' properties. Based on the foregoing, the second factor of *Doerr* is also satisfied.

> **3.    There was a "discharge, dispersal, seepage, migration release or escape" of a pollutant within the meaning of the policies.**

It is self-evident that the *Van Geffen* claims arise from the dispersal of pollutants, by Riceland and others, which caused damage to the properties at issue. *See* Petitions, Ex. 5. Courts agree that where there has been a discharge or release of contaminants, the fact that an insured did not intend the damages that arose from such discharge or release does not alter the applicability of the exclusion. That is, the fact that the damages were unexpected or unintended is not material in determining the applicability of this pollution exclusion.[42] What is relevant is whether the insured expected or intended the discharge or release.[43]   In this same vein, the fact that the insured may not have known and may not have expected or intended that its discharge contain "smoke, vapors,

---

[41] *See* 40 C.F.R. § 401.15.
[42] *See Grefer*, 919 So.2d at 772, citing *United States Fidelity & Guar. Co. v. T.K. Stanley, Inc.,* 764 F. Supp. 81, 83, 84, n. 4 (S.D.Miss.1991).
[43] *Id.*

soot, fumes, acid, alkalis, toxic chemicals, liquids or gasses, waste materials or other irritants, contaminants or pollutants" is immaterial.[44]

In the *Van Geffen* litigation, the plaintiffs clearly allege that there has been a discharge, release and/or escape of a pollutant caused by Riceland and others.  The *Van Geffen* plaintiffs allege that since at least the 1930s, it has been common knowledge in the oil industry that the disposal of oilfield wastes in unlined earthen pits inevitably results in seepage, which contaminates both surface and subsurface soils and waters.  The *Van Geffen* plaintiffs allege that Riceland and BP knew or should have known that their day to day operations in the Field would cause the soil, surface waters and groundwater of the subject properties to be contaminated with the above-referenced pollutants.  Rather than remove these substances during and after oil and gas exploration and production activities, the *Van Geffen* plaintiffs allege that Riceland and others concealed the contamination.  *See* Ex. 5(a).  Such allegations are clearly sufficient to satisfy the last *Doerr* factor.

The Evanston policies all exclude coverage for pollution damages.  When there is no potential for coverage, there is no duty to defend.  *Lodwick,* 126 So.3d at 550-51, 554, 557, 560.  Accordingly, a declaratory judgment is appropriate in favor of Evanston in this case.

### B.  THE LIMITED POLLUTION ENDORSEMENT DOES NOT APPLY, AND RICELAND HAS NOT MET THE CONDITIONS OF THE ENDORSEMENT.

The underlying damages in the *Van Geffen* litigation arise out of alleged long-term pollution to property.   Evanston anticipates that Riceland would argue that "Coverage D" in the

---

[44] *Id.,* citing *St. Paul Fire and Marine Ins. Co. v. Warwick Dyeing Corp.,* 26 F.3d 1195, 1203, n. 5 (1st Cir.1994) ("[I]t is not relevant whether or not Warwick actually knew that its waste materials contained hazardous substances.... The exclusion bars coverage so long as the discharge of 'waste materials' was expected and intended and as long as the property damage is 'arising out of' this discharge.").

primary policies has been triggered.[45]  However, Coverage D applies to bodily injury or property damage within the "pollution liability hazard,"[46] but only if the "occurrence" constituting the accident is first known to the insured, and reported within the policy period, or 90 days after the end of the policy period.  As an "occurrence" is an accident, this endorsement is clearly limited to accidental and unexpected pollution events, as the cases cited here, discuss.  *See, e.g., Doerr,* 774 So.2d at 126-27 (discussing the exclusion for general and continuous discharge of pollutions, but retaining potential coverage for "sudden or accidental" spills or discharges).  However, the *Van Geffen* plaintiffs do not allege a sudden, accidental, or limited discharge; rather, they allege decades of ongoing environmental pollution and contamination caused by the ongoing business of Riceland and others as oil and gas exploration and production companies.  *See* Ex. 5(a).

The *Van Geffen* plaintiffs allege that since 1985, the insured's oil and gas operations have damaged and continue to damage their properties, and that Riceland knew for many years that such actions would result in environmental damage to the *Van Geffen* plaintiffs' properties.  The limited exclusion, therefore, cannot apply on it face, to the allegations in the *Van Geffen* petition.

---

[45]  "COVERAGE D" under the policies is for "BODILY INJURY AND PROPERTY DAMAGE-OIL AND GAS LIMITED POLLUTION" and provides:
    A)    We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' included within the 'pollution liability hazard' to which this insurance applies.  We will have the right and duty to defend any suit seeking those damages.  We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result.
* * *
    B)    This insurance applies to 'bodily injury' and 'property damage' only if: .... (3)   The 'occurrence' became first known to you and reported to us within the policy period or 90 days after the end of the policy period.
Ex. 1 and Ex. 2.

[46]  "Pollution Liability Hazard" means all "'bodily injury' and 'property damage' arising out of the discharge, release or escape of 'pollutants' at or from: A) premises you own, rent or occupy; or B) any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations." Ex. 1 and Ex. 2.  "Pollutants" means "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  'Waste' includes materials to be recycled, reconditioned or reclaimed." Id.

Additionally, and even assuming that such allegations/claims would give rise to an "occurrence," under the policy, no such incident was reported to Evanston, until **April 19, 2017**. In particular, the coverage might apply if, among other things, the "bodily injury" or "property damage" is caused by an "occurrence" that first became "known to [the insured] and reported to [Evanston] within the policy period or 90 days after the end of the policy period."   Ex. 1 and Ex. 2.

Evanston attaches the Affidavit of Suzanne Braun, who testifies that Riceland did not report the alleged pollution event within the policy period, or within 90 days after the end of each respective policy period, which was 90 days after March 21, 2001, and March 21, 2002, respectively.  *See* Ex. 7.   The evidence makes clear that the *Van Geffen* claim, and any reporting of a pollution event by Riceland, was only given by Riceland to Evanston in **April of 2017**.  *Id.* The policies require that the "occurrence" be reported to Evanston during the policy period or 90 days after the end of the policy period.  Ex. 1 and Ex. 2.  This requirement is not satisfied with respect to either policy, and coverage "D" therefore does not apply.

Policies with similar provisions and conditions were well addressed in *Lodwick,* which found the provisions unambiguous, and which could not be enforced to provide coverage, because the conditions of the endorsements were not satisfied. *Lodwick,* 126 So.3d at 555-57 (as to Steadfast); and 557-60 (ace to ACE).[47]   As noted by the court, such provisions are intended to cover for "short term, instantaneous pollution incidents, but not for incidents such as alleged by [legacy lawsuit] plaintiffs." *Id.* at 560.  Likewise, it was not alleged that the contamination in that legacy lawsuit was abrupt and instantaneous, and known and reported by the insured to the insurer

---

[47]  The ACE policy contained similar provisions regarding a sudden, unexpected discharge of pollutants, knowledge of the discharge by the insured; and reporting by the insured to the insurer within 60 days of commencement of the discharge. *Id.*

pursuant to the conditions in the policy.  *Id.*  Accordingly, there is also no coverage under

"Coverage D" because the claims do not involve a sudden or accidental spill, and also because

Riceland never reported to Evanston within the policy period, or 90 days after said policies expired.

**C.    THERE IS NO COVERAGE FOR DAMAGE TO PROPERTY LEASED BY, AND/OR IN THE CARE, CUSTODY, AND CONTROL OF RICELAND.**

Coverage A in the Primary Policies excludes coverage for property damage to:

> (1)    Property you own, rent or occupy;
>
> * * *
>
> (3)    Property loaned to you;
>
> * * *
>
> (5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or
>
> (6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

* * *

Ex. 1 and Ex. 2.  The Umbrella Policies exclude coverage for "property damage" to:

> a.    Property you own, rent or occupy;
>
> * * *
>
> c.    Property loaned to you;
>
> d.    Property in your care, custody, or control;
>
> e.    That particular part of real property on which you or a contractor or subcontractor working directly or indirectly for you are performing operations, if the "property damage" is due to those operations; or
>
> f.    That particular part of real property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> * * *
>
> Paragraph f. of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

* * *

Ex. 3 and Ex. 4.

22

According to the petitions, the plaintiffs own the properties at issue, and were leasing it to the defendants, including Riceland.  *See* Ex. 5(a).  Plaintiffs are lessors and assignees or beneficiary of mineral and surface leases to the defendants, owners of property contaminated by defendants under various mineral leases, and the like.   Ex. 5(a) at ¶ 3, 5, 6.  Defendants are oil and gas companies who conducted activities on plaintiffs' property through leases, assignments, subleases, servitudes, and the like.   *Id.*  The exhibits attached to the petition also identify Riceland as a well operator on some of the plaintiffs' properties.  *See* Exhibits to App. 5.

Louisiana courts have long enforced the owned-leased property exclusions and care, custody and control exclusions in Commercial General Liability Policies.[48]  The purpose of such exclusions is "to protect insurers from the risks concerned in insuring property under the care, custody or control of the insured in the sense of being owned, rented or used by the insured and where there might be some advantage to the insured in falsifying or exaggerating a loss."[49]  In the environmental context, these exclusions preclude coverage for clean-up of contaminated property that the insured either owned/leased, was loaned to, or in the care, custody or control of the insured. The damages claimed by the *Van Geffen* plaintiffs occurred to property that was leased to Riceland and/or was in Riceland's care, custody, or control and/or was where Riceland was performing operations.  To that extent, Exclusion J (1) (3) & (5) under Coverage A of the Primary Policies, Exclusion F (1) & (3) under Coverage D of the Primary Policies, and Exclusion 6 (a) (c) (d) & (e) under the Umbrella Policies apply, and Evanston is entitled to a declaratory judgment on that issue.

### D.    RICELAND'S CROSS CLAIM MUST BE DENIED AND DISMISSED.

Riceland has filed a cross claim in this case against Evanston.  Rec. Doc. 6.  Essentially, Riceland argues that the policies provide coverage, and requests that Evanston be ordered to

---

[48] *Thomas W. Hooley & Sons v. Zurich Gen. Acc. and Liab. Ins. Co.,* 235 La. 289, 103 So.2d 449 (La.1958).
[49] *Assumption Parish School Board  v. Mt. Airy Ins. Co.,* 1995 WL 626151, *5, 1995 U.S. Dist. LEXIS 15910 at 17.

provide Riceland with a legal defense in the *Van Geffen* matter and that Evanston be ordered to indemnify Riceland for any liability assessed against Riceland in the *Van Geffen* litigation.   *Id.* For the reasons provided above, there is no coverage under the Evanston policies, and no duty exists for Evanston to indemnify or defend Riceland in the *Van Geffen* litigation.   Accordingly, Riceland's cross claim should be denied, and its claim dismissed, with prejudice.

## VI.    CONCLUSION

For the reasons set forth above, the entry of Summary Judgment, and the following declarations, in favor of Evanston Insurance Company is appropriate.   Specifically, Evanston moves the Court to rule that:

(1)    Evanston does not owe a duty to defend or indemnify Riceland in the *Van Geffen* litigation because the pollution exclusions of the Primary and the Umbrella Liability Policies apply to preclude coverage for the long-term, environmental pollution damage alleged by plaintiffs in the *Van Geffen* lawsuit;

(2)    The *Van Geffen* lawsuit does not trigger Evanston's "Coverage D-Bodily Injury and Property Damage-Oil and Gas Limited Pollution" endorsement in the Primary Policies, and Riceland has not met the conditions of the endorsement.

(3)    There is no coverage for damage to property leased by Riceland and/or in the care, custody, and control of Riceland based on the Leased Property/Care, Custody and Control Exclusions in the Evanston Policies.

For the same reasons, Evanston further moves the Court to deny and dismiss the cross claim filed by Riceland, with prejudice, and all at Riceland's costs.

Respectfully submitted,

**DEGAN, BLANCHARD & NASH**

 */s/ Catherine N. Thigpen*
Sidney W. Degan, III (#4804)
Catherine N. Thigpen (#30001)
DEGAN, BLANCHARD & NASH
5555 Hilton Avenue, Suite 620
Baton Rouge, Louisiana 70808
Telephone:    (225) 610-1110
Facsimile:     (225) 610-1220
Email:  sdegan@degan.com
             cthigpen@degan.com

Karl H. Schmid (#25241)
DEGAN, BLANCHARD & NASH
400 Poydras Street, Suite 2600
New Orleans, Louisiana 70130
Telephone:    (504) 529-3333
Facsimile:     (504) 529-3337
Email: kschmid@degan.com
***Attorneys for Plaintiff/Defendant-in-
Counterclaim, Evanston Insurance
Company***

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of November, 2018, I electronically filed the foregoing *Memorandum in Support of Motion for Summary Judgment* with the Clerk of Court using the CM/ECF system that will send a notice of electronic filing to all CM/ECF participants.

 */s/ Catherine N. Thigpen*