# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| **EVANSTON INSURANCE CO** | **CASE NO. 2:17-CV-01031** |
| **VERSUS** | **JUDGE SUMMERHAYS** |
| **RICELAND PETROLEUM CO** | **MAGISTRATE JUDGE KAY** |

## REASONS FOR DECISION

Presently before the court is the Motion for Summary Judgment [Doc 20] filed by Evanston Insurance Company. A hearing on the matter was held on January 28, 2019. After hearing argument from counsel, the court took the matter under advisement.

Riceland Petroleum Company ("Riceland"), is a named insured under Evanston Oil and Gas Industries Liability policies, for two consecutive policy periods from March 21, 2000 through March 21, 2002, and two umbrella or excess policies, for the same policy periods. See Ex. 1, 2, 3, 4 to Motion for Summary Judgment. Riceland was sued in underlying litigation entitled Van Geffen Bros., LLC, et al. v. ConocoPhillips Company, et al., currently pending in the 31st Judicial District Court for the Parish of Jefferson Davis, State of Louisiana ("Van Geffen litigation"), and requested insurance coverage and defense costs from Evanston, for its exposure in the Van Geffen litigation, and under the aforementioned policies. Evanston filed the instant Complaint for Declaratory Relief seeking a determination that Evanston's policies do not provide any coverage for the alleged liability of Riceland in the Van Geffen litigation, and also, that Evanston has no obligation to defend Riceland in the Van Geffen litigation. Evanston seeks summary judgment declaring: (1) Evanston does not owe a duty to defend or indemnify Riceland in the Van Geffen litigation because the pollution exclusions of the Primary and the Umbrella Liability Policies apply

1

to preclude coverage for the long-term, environmental pollution damage alleged by plaintiffs in the Van Geffen lawsuit; (2) the Van Geffen lawsuit does not trigger Evanston's "Coverage D-Bodily Injury and Property Damage-Oil and Gas Limited Pollution" endorsement in the Primary Policies, and Riceland has not met the conditions of the endorsement; and (3) there is no coverage for damage to property leased by Riceland and/or in the care, custody, and control of Riceland based on the Leased Property/Care, Custody and Control Exclusions in the Evanston Policies.

## BACKGROUND

Van Geffen Bros., LLC, and other plaintiffs, filed a state court "legacy lawsuit" against Riceland and other oil and gas companies alleging pollution and environmental contamination.[1] The plaintiffs in the Van Geffen case are landowners or the descendants, heirs, or assignees who claim that Riceland and other oil and gas production companies in Louisiana caused environmental contamination of their properties by pollutants over a period of several years or even decades. Their allegations include the operation or construction of various oil and gas facilities, including pits, wells, sumps, flowlines, pipelines, tank batteries, wellheads, measuring facilities, separators and injection facilities.[2] The Van Geffen plaintiffs also allegedly suffered damages resulting from the improper disposal of oilfield waste in unlined earthen pits, constructed by Riceland and other defendants, on or near their properties during the course of oil and gas exploration and production activities.[3] The oilfield wastes deposited in these pits include such substances as naturally occurring radioactive material ("NORM"), produced water, drilling fluids, chlorides, hydrocarbons, and heavy metals.[4] Other toxic and hazardous substances allegedly used by

---

[1] See Van Geffen petitions, attached as Ex. 5, in globo, to Motion for Summary Judgment.
[2] Ex. 5(a) to Motion for Summary Judgment at ¶ 5.
[3] See Ex. 5(a) at ¶¶ 7-11 of Plaintiff's Motion for Summary Judgment.
[4] Id.

2

Riceland and other defendants in their day to day exploration and production activities include mercury, lead based compounds, chromium based algicides, hydrochloric acid, caustic soda, and various corrosion inhibitors.[5] The Van Geffen plaintiffs allege that leaks, spills, and other surface and subsurface discharges of these and other substances from wells, pipelines, tank batteries, gas plants and other equipment or facilities have polluted the surface and subsurface of the properties.[6] They also allege that Riceland's and other defendants' failure to timely remove or remediate this "toxic pollution" in the soils and groundwater of the properties has allowed the pollution to "migrate and spread."[7] The Van Geffen plaintiffs also allege that the pollution has now permanently damaged the drinking water and other aquifers underlying the properties.[8] While the Van Geffen plaintiffs assert various causes of action, these causes of action are all grounded in the activities of the defendants and the pollution-related damage allegedly resulting from that activity.[9]

## LAW AND ANALYSIS

### 1. Summary Judgment Standard

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The Court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

---

[5] Id.
[6] Ex. 5(a) to Motion for Summary Judgment at ¶ 5.
[7] Ex. 5(a) to Motion for Summary Judgment at ¶ 12.
[8] See Ex. 5(a) of Plaintiff's Motion for Summary Judgment at ¶¶ 12-17.
[9] See Ex. 5(a) of Plaintiff's Motion for Summary Judgment at ¶¶ 15-36.

3

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### 2. **The Policies.**

Under Louisiana law, the duty to defend is determined strictly based upon the allegations in the underlying petition and the terms and conditions of the relevant policy. *Vaughn v. Franklin*, 785 So.2d 79, 84 (La. App. 1st Cir. 3/28/2001). Under the "eight corners" rule, the court must compare the four corners of the petition against the four corners of the insurance policy, to determine whether the claims fall within the scope of the duty to defend. Accordingly, the Court begins with the language of the policies.

Coverage A under the Evanston Primary Policies, as well as the Umbrella Policies, contain almost identical pollution exclusions, which preclude coverage for property damage "arising out

of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants'" and "any loss, cost or expense arising out of any: (a) request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of 'pollutants.'"[10] The Primary Policies provide:

### SECTION I - COVERAGES

*COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

*1) INSURING AGREEMENT*

*A)　We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages. We may at our discretion investigate any 'occurrence' and settle any 'claim' or 'suit' that may result. But:*

> *(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and*
>
> *(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A., B. or D. or medical expenses under Coverage C.*

*No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS-COVERAGES A., B. and D.*

*B)　This insurance applies to "bodily injury" and "property damage" only if: (1) The "bodily injury" or "property damage" is caused by an occurrence that takes place in the "coverage territory"; and (2) The "bodily injury" or "property damage" occurs during the policy period.*

*C)　Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."*

\* \* \*

*2) EXCLUSIONS*

*This insurance does not apply to:*

\* \* \*

---

[10] Ex. 1, 2, 3, 4 of Plaintiff's Motion for Summary Judgment.

5

*F) POLLUTION*

*(1) 'Bodily Injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'*

*(2) Any loss, cost or expense arising out of any:*

*(a) request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of 'pollutants'; or*

*(b) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of 'pollutants.'*

\* \* \*

The Umbrella Policies provide:

### *SECTION I - INSURING AGREEMENTS*

*Occurrence and Claims-Made Coverage*

*A. This insurance applies to "bodily injury," "property damage," .... written on an "occurrence" basis, but only if:*

*1. The "bodily injury" or "property damage" was caused by an "occurrence," ...;*

*2. The "occurrence" or "offense" took place in the "coverage territory," and*

*3. The "bodily injury," "property damage,"...occurred during the policy period of this policy.*

\*\*\*

*It is agreed that:*

\*\*\*

*3. "Property damage" that is loss of use of tangible property that is not physically injured or destroyed shall be deemed to occur at the time of the "occurrence" that caused it.*

\*\*\*

***Coverage A - Bodily Injury and Property Damages Liability***

6

*A. Insuring Agreement*

*We will pay on behalf of the insured for that portion of "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies, but only up to the Limits of Insurance stated in Item 3. of the Declarations. No other obligations or liability to pay sums or performed acts or services is covered unless explicitly provided for under SECTION II - DEFENSE AND SUPPLEMENTARY PAYMENTS-COVERAGE A and B.*

***

## POLLUTION ENDORSEMENT – FOLLOWING FORM

*It is hereby agreed that exclusion 1., Section I., Coverage A and B – Policy Exclusions, is deleted in its entirety and replaced by the following:*

1. *Bodily injury, property damage, personal injury or advertising injury out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants; or*

2. *Any loss, cost or expense arising out of any:*

a. *request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or*

b. *claim or suit or on behalf of any person, organization or governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of pollutants.*

*This exclusion does not apply to bodily injury, property damage, personal injury or advertising injury if such liability is covered by underlying insurance shown in the schedule below for the full limit shown and then only for such liability for which coverage is provided. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste derived from any source, and including but not limited to petroleum derivative products which contaminate, pollute and/or defile any physical substance or matter. Waste includes materials to be recycled, reconditioned, reclaimed or disposed of.*

In Louisiana, an insurance policy must be construed in accordance with the general rules of interpretation of contracts under the Louisiana Civil Code. *Coleman v. School Board of Richland Parish*, 418 F.3d 511, 516 (5th Cir. 2005). The insured bears the burden of proving that an incident

giving rise to a claim falls within the policy's terms. Id. at 517-18. The insurer, however, bears the burden of proving that an exclusionary clause within the policy would apply. *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La. 2000).

### 3. **The Doerr Test.**

Louisiana courts provide significant guidance in addressing the issues raised in this case. The Louisiana Supreme Court has established a three part test to determine if the type of pollution exclusion in the Evanston policy at issue bars coverage, namely

(1) whether the insured is a "polluter" within the meaning of the exclusion;

(2) whether the injury causing substance is a "pollutant" within the meaning of the exclusion; and

(3) Whether there was a "discharge, dispersal, seepage, migration release or escape" of a pollutant within the meaning of the policy

*Doerr v. Mobile Oil Corp.*, 774 So.2d 119 (La. 2000). The *Doerr* decision provided an exhaustive analysis of the history of pollution exclusion provisions. In *Doerr*, the underlying claims were not environmental pollution claims. Later state court decisions have addressed the application of Doerr to environmental pollution claims. One such case, *Lodwick, L.L.C. v. Chevron U.S.A., Inc*, 126 So.3d 544 (La.App. 2 Dir. 10/2/13) involved a legacy case with similar factual allegations to the present case. There, the court summarized the applicability of the *Doerr* reasoning to legacy lawsuits as follows:

> In *Doerr*, the seminal case addressing pollution exclusions, the Louisiana Supreme Court detoured from its previous stance that total pollution exclusions were intended to be read strictly to exclude coverage for all interactions with irritants or contaminants. Rather, the court narrowed its application of the exclusions and clarified that the purpose of the pollution exclusion was to exclude coverage for environmental pollution. It was also meant to strengthen environmental protection standards by imposing the full risk of loss due to personal injury or property damage from pollution upon the polluter by eliminating the option of spreading that risk

through insurance coverage. In its reasoning, the court explained that pollution exclusions were born out of the environmental movement of the 1970s and were shaped in response to legislation designed to prompt the cleanup of hazardous waste sites and impose cleanup costs on responsible parties. Notably, *Doerr* did not involve the type of claims for which the exclusion was designed; it was a personal injury case, not an environmental pollution case as alleged here. Thus, guided by the principles set forth in *Doerr*, we find that when long term pollution damages are alleged, such as the case with legacy lawsuits, pollution exclusions are applicable to exclude coverage. As stated in *Doerr*, this is the very purpose of a pollution exclusion.

*Id.* at p. 560-561.

### 4. Applying the Doerr Test to the Van Geffen Allegations.

The Court must apply the "eight corners" rule to the factors in the *Doerr* test by comparing the "four corners" of the Van Geffen petition against the "four corners" of the policies and "determine whether the claims, liberally interpreted and taken as true, fall within the scope of the duty to defend. If there is no reasonable interpretation of the policy, when applied to the undisputed facts shown by the evidence supporting the motion, under which coverage should be afforded, summary judgment will be proper, and there will be no duty to defend."[11]

#### *(a) Is Riceland a "polluter"?*

The first *Doerr* factor -- whether Riceland is a "polluter" -- requires the court to consider "the nature of the insured's business, whether that type of business presents a risk of pollution, whether the insured has a separate policy covering the disputed claim, whether the insured should have known from a read of the exclusion that a separate policy covering pollution damages would be necessary for the insured's business, who the insurer typically insures, any other claims made under the policy, and any other factor the trier of fact deems relevant to this conclusion." *Doerr*, 774 So.2d at 135. The nature of the insured's business and whether the insured's business presents

---

[11] *Lodwick*, 126 So.3d at 550.

a risk of pollution are the most important factors in the "polluter" test. *Grefer v. Travelers Ins. Co.*, 919 So.2d 758 (La. App. 5 Cir. 12/16/05). The plaintiffs in the Van Geffen lawsuit allege that defendants, including Riceland, are oilfield operators and producers. Louisiana courts have consistently held that oilfield operators and producers sued in legacy lawsuits fit the definition of "polluters" based upon the fact that oil drilling and related activities present a clear and obvious risk of pollution.[12] The court concludes that Riceland clearly meets the definition of a "polluter" under the *Doerr* test.

### *(b) Are the injury-causing substances alleged in the Van Geffen litigation "pollutants"?*

In determining the second factor of the *Doerr* test, the Court must consider "the nature of the injury-causing substance, its typical usage, the quantity of the discharge, whether the substance was being used for its intended purpose when the injury took place, whether the substance is one that would be viewed as a pollutant as the term is generally understood, and any other factor the trier of fact deems relevant to that conclusion."[13] The Van Geffen plaintiffs allege soil and water contamination with oilfield wastes, including NORM, produced water, drilling fluids, chlorides, hydrocarbons, and heavy metals.[14] Other toxic and hazardous substances allegedly used by Riceland and others in their day to day exploration and production activities include mercury, lead based compounds, chromium based algicides, hydrochloric acid, caustic soda, and various corrosion inhibitors.[15] The Van Geffen plaintiffs allege that leaks, spills, and other surface and subsurface discharges of these and other substances from wells, pipelines, tank batteries, gas plants

---

[12] *Lodwick*, 126 So.3d at 561. See also, *Grefer*, 919 So.2d at 768–69; 36 *Pro-Boll Chem. & Fertilizer Co. v. U.S. Fire & Guar. Co., No.* CIV.A. 01-1531, 2004 WL 3494045, at *7 (W.D. La. Nov. 15, 2004) (applying *Doerr* to a case involving long term environmental discharge of pesticides).
[13] *Doerr*, 774 So.2d at 135.
[14] Ex. 5(a) of Motion for Summary Judgment at ¶ 8.
[15] Ex. 5(a) of Motion for Summary Judgment at ¶ 9.

10

and other equipment or facilities have further polluted the surface and subsurface of the subject properties.[16] The toxins alleged by in the Van Geffen petition are the very same toxins and pollutants that the court in *Lodwick* found to constitute "pollutants" within the meaning of the total pollution exclusion. *Lodwick*, 126 So.3d at 551-52, 554, 560-61; *see also*, *Grefer*, 919 So.2d at 771. The substances alleged in the Van Geffen lawsuit thus fall squarely within the Evanston policies' definition of "Pollutants."[17]

### (c) Was there was a "discharge, dispersal, seepage, migration release or escape" of a pollutant within the meaning of the policy?

As to the final factor in the *Doerr* test, the Court must consider "whether the pollutant was intentionally or negligently discharged, the amount of the injury-causing substance discharged, whether the actions of the alleged polluter were active or passive, and any other factor the trier of fact deems relevant."[18] In the Van Geffen lawsuit, the plaintiffs allege a long term discharge, release and/or escape of a pollutant caused by Riceland and the other defendants.[19] The Van Geffen plaintiffs complain also about the day to day operations of the various oilfield companies:

> Defendants knew or should have known that their day to day operations in the Lake Arthur Field would cause the soil, surface waters and groundwater of plaintiff's property to be contaminated with the substances described in paragraphs 7 through 11 above. Rather than remove these substances during and after oil and gas exploration and production activities, defendants chose to conceal and cover up their contamination. This concealment and cover up was routine practice and has continued to date. The defendants' failure to responsibly and timely remove or remediate this toxic pollution in the soils and groundwater of plaintiffs Property has allowed the pollution to migrate and spread. Defendants' pollution has now permanently damaged the drinking water and other aquifers underlying the Field.[20]

The very nature of the allegations made by the Van Geffen plaintiffs satisfy this factor.

---

[16] Ex. 5(a) of Motion for Summary Judgment.
[17] Also, regarding the "quantity of discharge," the Van Geffen plaintiffs allege the substances have leaked onto their properties for many years and continue to leak onto their properties, which would suggest a large quantity of these substances are involved.
[18] *Doerr*, 774 So.2d at 136.
[19] Ex. 5(a) of Motion for Summary Judgment at ¶ 7.
[20] Ex. 5(a) of Motion for Summary Judgment at ¶12.

### 5. Riceland's Allegation that Some Causes of Action Are Not Related to Pollution.

Riceland argues that Evanston has a duty to defend because some causes of action raised by the Van Geffen plaintiffs are grounded on personal injuries, namely trespass and continuing nuisance claims. A review of the Van Geffen petition reflects that all of the plaintiff's claims are based on allegations of contamination by pollution. The *Lodwick* court rejected this exact argument:

> plaintiffs make no demands for damages concerning defendants' operations other than those related to the seepage or migration of pollutants. For example, plaintiffs do not request damages for the recovery for simple surface-related disturbances such as the unauthorized removal of trees or damage to topsoil. Nor do plaintiffs seek an injunction for the removal of Oracle's stray wells that were operated beyond its mineral lease on plaintiffs' property. In fact, plaintiffs specifically describe the alleged trespass at issue as the "continued presence of oilfield wastes on plaintiffs' lands," and the civil fruits that are alleged to be due are described as the unauthorized "storage of toxic pollution and wastes in the groundwaters and soils." Therefore, we conclude that all of the different theories of recovery and allegations are a direct result of defendants' alleged contamination and pollution damages.[21]

The court finds this argument has no merit. The pollution exclusions in the Evanston policies unambiguously exclude coverage for the claims raised in the Van Geffen litigation.

### 6. Riceland's Argument on Coverage D

Riceland also argues Coverage D would provide apply to the Van Geffen litigation. That provision provides as follows:

> ***COVERAGE D. BODILY INJURY AND PROPERTY DAMAGE – OIL AND GAS LIMITED POLLUTION***
>
> *1. INSURING AGREEMENT*
>
> *A) We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" included within the "pollution liability hazard" to which this insurance applies. We will have the right and duty to defend any suit seeking those damages. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.*

---

[21] *Lodwick*, 126 So.3d at 551-552.

\* \* \*

*B) This insurance applies to "bodily injury" and "property damage" only if:*

> *(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*
>
> *(2) The "bodily injury" or "property damage" occurs during the policy period;*
>
> *(3) The "occurrence" became first known to you during the policy period and you report it to us within the policy period or 90 days after the end of the policy period.*

\* \* \*

Coverage D applies to an "occurrence" which is defined in the Evanston Policies as an accident,[22] which is not what is alleged here. Further, Coverage D requires that the occurrence be known to the insured and reported to Evanston within the policy period or 90 days after the end of the policy period, which did not occur in this case. [23] Riceland argues that the policy is ambiguous because the word "and" is not included between paragraphs (B)(2) and (B)(3) meaning that all three requirements were not necessary. Under Louisiana law, when interpreting a contract, "[a] provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."[24] Riceland's reading of this provision, however, would lead to absurd results which would render the provision ineffective. If Riceland's argument were correct, an incident could occur years or even decades after coverage ended and the insurer would be required to provide coverage. Requiring all three conditions to be met in order to trigger coverage under Coverage D is the only reasonable interpretation of the provision. The

---

[22] See exhibit 1 and exhibit 2 to Motion for Summary Judgment.
[23] See exhibit 7 to Motion for Summary Judgment.
[24] Louisiana Civil Code Article 2049.

13

court must interpret each provision of the policy so that each is "given the meaning suggested by the contract as a whole."[25]

7. **Coverage for Damage to Lease Property.**

Evanston also argues that there is no coverage for damage to property leased by and/or in the care, custody and control of Riceland.

Coverage A in the Primary Policies excludes coverage for property damage to:

*(1) Property you own, rent or occupy;*

\* \* \*

*(3) Property loaned to you;*

\* \* \*

*(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or*

*(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

\* \* \*

*The Umbrella Policies exclude coverage for "property damage" to:*

*a. Property you own, rent or occupy;*

\* \* \*

*c. Property loaned to you;*

*d. Property in your care, custody, or control;*

*e. That particular part of real property on which you or a contractor or subcontractor working directly or indirectly for you are performing operations, if the "property damage" is due to those operations; or*

---

[25] Louisiana Civil Code Article 2050.

14

*f. That particular part of real property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

\* \* \*

*Paragraph f. of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."*

\* \* \*

According to the allegations made by the Van Geffen plaintiffs, the plaintiffs own the properties at issue and were leasing them to defendants, including Riceland.[26] Defendants are oil and gas companies who conducted activities on the properties through leases, assignments, subleases, servitudes and the like.[27] The damages alleged in the Van Geffen litigation occurred to property that was leased to Riceland and was in Riceland's care, custody, or control and was the location where Riceland was performing operations. Accordingly, Exclusion J (1) (3) & (5) under Coverage A of the Primary Policies, Exclusion F (1) & (3) under Coverage D of the Primary Policies, and Exclusion 6 (a) (c) (d) & (e) under the Umbrella Policies apply to bar coverage.

## CONCLUSION

The court finds there are no genuine issues of material fact and Evanston is entitled to summary judgment. The court finds Evanston does not owe a duty to defend or indemnify Riceland in the Van Geffen litigation. Specifically, the court finds:

(1) Evanston does not owe a duty to defend or indemnify Riceland in the Van Geffen litigation because the pollution exclusions of the Primary and the Umbrella Liability Policies apply to preclude coverage for the long-term, environmental pollution damage alleged by plaintiffs in the Van Geffen lawsuit;

---

[26] See Exhibit 5(a) to Motion for Summary Judgment.

[27] Id.

(2) the Van Geffen lawsuit does not trigger Evanston's "Coverage D-Bodily Injury and Property Damage-Oil and Gas Limited Pollution" endorsement in the Primary Policies, and Riceland has not met the conditions of the endorsement; and

(3) there is no coverage for damage to property leased by Riceland and/or in the care, custody, and control of Riceland based on the Leased Property/Care, Custody and Control Exclusions in the Evanston Policies.

For these reasons, the court grants the relief sought by Evanston in the Complaint for Declaratory Relief and dismisses Counter Claim raised by Riceland. A separate order in conformity with the foregoing reasons will be entered.

THUS DONE in Chambers on this 28th day of March, 2019.

Robert R. Summerhays
United States District Judge